

FILED
2021 Sep-23 PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FERLANDO CARMISE MIMS,        )
                             )
        Petitioner,          )
                             )
vs.                          )        2:18-cv-08019-LSC
                             )        (2:16-cr-00303-LSC-JHE-2)
UNITED STATES OF AMERICA,     )
                             )
        Respondent.          )
                             )

## MEMORANDUM OF OPINION

## I.    Introduction

This is a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, filed by petitioner Ferlando Carmise Mims ("Mims"). (Doc. 1.) Mims claims that his trial counsel was ineffective for (1) failing to file a motion to suppress on his behalf, (2) "refus[ing] to allow [him] to do anything but plea[d] guilty and depriv[ing] [him] of [his] right to a jury trial," (3) withdrawing objections that he had previously filed to the Presentence Investigation Report ("PSR") and committing other errors at sentencing, and (4) failing to file a direct appeal on his behalf. The United States has responded in opposition to Mims's § 2255 motion, attaching an affidavit of Attorney Kevin Roberts ("Mr. Roberts"), who represented

Mims during his plea and sentencing proceedings, and the transcript of Mims's change of plea hearing. (Doc. 5.) The Court held an evidentiary hearing on Mims's motion on September 22, 2021, at which time Mims and Mr. Roberts testified. The Court appointed a new lawyer to represent Mims for purposes of this proceeding and the hearing.

For the reasons set forth below, the § 2255 motion is due to be denied.

## II.    Background

On September 28, 2016, Mims was charged with five other defendants in a six-count indictment. The indictment alleged that Mims conspired to possess with the intent to distribute and distribute a mixture and substance containing a detectable amount of heroin, cocaine hydrochloride, and fentanyl, each a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and 846. (Doc. 1 in *United States v. Ward et al.*, 2:16-cr-00303-LSC-JHE-2.) A superseding indictment was returned against him on October 26, 2016. On November 9, 2016, Mims initially appeared on the charges and was arraigned. He pled guilty, pursuant to a written plea agreement, to all charges against him on February 2, 2017. Specifically, Mims pled guilty to the following: Count 1 – conspiracy to possess with the intent to distribute and distribution of a mixture and substance containing one thousand grams or more of a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), and

846; Counts 2–3, 6–10, and 13 – possession with the intent to distribute a mixture and substance containing a detectable amount of heroin or fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); Counts 17–24, 26, 31, 33, and 34 – use of a communications facility to commit a felony drug trafficking crime, in violation of 21 U.S.C. § 843(b); and Count 55 – carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Doc. 135 in *United States v. Ward et al.,* 2:16-cr-00303-LSC-JHE-2.) The plea agreement contained an appeal waiver subject to some exceptions, including claims for ineffective assistance of counsel.

Mims was sentenced on July 27, 2017. He was sentenced to 121 months imprisonment—the low end of the guideline range—on all the counts except for Count 55, with each count to run concurrent to each other. On Count 55, the Court ordered a consecutive 60-month sentence. In total, Mims received 181 months imprisonment and lifetime supervised release. Mims did not appeal. He remains in custody.

## III.   Timeliness and non-successive Nature of Mims' Section 2255 Motion

The Court entered its Judgment and Commitment Order on July 28, 2017. (Doc. 246 in *United States v. Ward et al.*, 2:16-cr-00303-LSC-JHE-2.) Mims did not file an appeal. His conviction thus became final fourteen days later, on August 12,

2017. *See, e.g., Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011). Mims filed the § 2255 motion on July 16, 2018, which is within one year of the date which his conviction became final. The Eleventh Circuit applies the "mailbox rule" to deem a prisoner's § 2255 motion to have been filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam). Thus, the motion is timely.

Mims has not filed a previous § 2255 motion. The motion is not "second or successive" within the meaning of the Antiterrorism and Effective Death Penalty Act of 1996. *Dodd v. United States*, 545 U.S. 353, 358 (2005).

## IV.   Standard

In litigation stemming from a § 2255 motion, "'[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the . . . [movant's] allegations are affirmatively contradicted by the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)).

However, it is appropriate for the Court to conduct an evidentiary hearing if, "'accept[ing] all of the . . . [movant's] alleged facts as true,'" the movant has

"'allege[d] facts which, if proven, would entitle him to relief.'" *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal citations omitted).

## V.    Discussion

Mims waived certain rights when he entered into his guilty plea, but he did not waive the right to raise a claim of ineffective assistance of counsel on appeal or on collateral review. Moreover, claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

For a convicted defendant's claim of ineffective assistance of counsel to warrant post-conviction relief, two components must be present—deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. To demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. The court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

In determining whether an attorney's performance fell below the objective standard of reasonableness, the court is highly deferential to counsel's decisions and

must keep in mind that "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged performance, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The court must also indulge a strong presumption that counsel's performance falls within the "wide range of reasonable professional assistance." *Id.* When seeking to overcome this presumption, a movant cannot rely on bare accusations and complaints, but instead "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690.

A.    **Mims's claim that his defense counsel was ineffective for failing to file a motion to suppress evidence**

With regard to claims about a failure to file a motion to suppress, the *Strickland* two-prong test for ineffective assistance of counsel turns on the viability of the motion to suppress. *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015). A lawyer's conduct falls outside of the reasonableness and professionalism standard if failure to pursue a motion to suppress would have affected the outcome of the case had the defendant rejected the plea and gone to trial instead. *Premo v. Moore*, 562 U.S. 115, 124 (U.S. 2011).

Mims presumably asserts that his counsel was ineffective for failing to file a motion to suppress with regard to Count 55, which alleged a violation of 18 U.S.C. §

924(c).  To support his allegation, Mims wrote that "because the gun was purchased for drugs, it was not used to facilitate drug trafficking. I bought the gun and it was not found near drug proceeds nor was it present to protect me during any drug deals." (Doc. 1 at 5.)

However, Mims does not identify what evidence he believes should have been suppressed if a motion had been filed on his behalf. Nothing in Mims's argument would support a motion to suppress any evidence against him on Count 55. Instead, Mims appears to argue that he does not believe that the facts of his case supported conviction on Count 55, which is a separate issue. Additionally, Mr. Roberts testified at the evidentiary hearing that Mims never asked him to file a motion to suppress.

Contrary to Mims' claim, the record provided more than adequate support for a finding of guilt on Count 55. The facts in the plea agreement support the finding of guilt. (Doc. 135 at 4-9, in *United States v. Ward et al.*, 2:16-cr-00303-LSC-JHE-2.) The facts contained therein reveal that Mims was intercepted over a wiretap discussing his plan to exchange drugs for a Ruger 9mm pistol. (*Id.*) Later that day, and after the exchange, Mims and a coconspirator were pulled over by Birmingham Police. (*Id.*) After Mims was removed from the vehicle by police, he fled on foot as two small baggies containing fentanyl fell out of his shoes. (*Id.*) In searching the vehicle, officers found the Ruger 9mm under the driver's seat. (*Id.*) These facts

clearly support a conviction to the charge. In *Smith v. United States*, 508 U.S. 223 (1993), the Supreme Court affirmed the Eleventh Circuit's holding that, "[b]oth a firearm's use as a weapon and its use as an item of barter fall within the plain language of § 924(c)(1) so long as the use occurs during and in relation to a drug trafficking offense." *Id.* at 240.

Moreover, the plea transcript makes clear that Mims understood the charge against him in Count 55 and entered a knowing and voluntary plea to it. Near the end of the consent colloquy, the Court specifically addressed Count 55, as follows:

> THE COURT:      ARE YOU WANTING TO PLEAD
>                 GUILTY BECAUSE YOU ARE GUILTY
>                 IN EACH ONE OF THESE COUNTS
>                 THAT WE HAVE TALKED ABOUT?
>
> THE DEFENDANT:  YES, SIR.
>
> THE COURT:      INCLUDING COUNT 55?
>
> THE DEFENDANT:  YES, SIR.

(Doc. 5-2.) Habeas relief is not due to be granted on this claim.

## B. Mims's involuntary guilty plea claim

Mims maintains that his Sixth Amendment right to a jury trial was violated because his "[c]ounsel refused to subject the case to adversarial challenges" and "refused to allow him to do anything but plead guilty." (Doc. 1 at 8.) Mims offers no additional information in support of these generic statements, including no specific

information about how his plea was unlawfully induced or why it was not voluntarily made.

Guilty pleas that are induced by promises or threats or those that are not entered into knowingly are subject to collateral attack on the basis of due process. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014); *United States v. Brown*, 117 F.3d 471, 476 (11th Cir. 1997).

> At the same time, plea bargaining retains its benefits of certainty and efficiency only if dispositions by guilty plea are accorded a great measure of finality. While § 2255 exists to safeguard a person's freedom from detention in violation of constitutional guarantees, the Eleventh Circuit has observed that more often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea. As a result, the representations of the defendant, lawyer, and the prosecutor at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that, in the face of the record, are wholly incredible.

*Winthrop-Redin*, 767 F.3d at 2016 (internal quotations and citations omitted).

Mims's conclusory allegation fails to provide specific facts indicating that his plea was involuntary. As an initial matter, Mims signed and initialed every page of a 23-page written plea agreement that clearly set out, among other things, the charges and their maximum penalties, the sentence the Government would recommend, Mims's waiver of certain appeal and post-conviction rights, and the advisory nature

of the Sentencing Guidelines. The Plea Agreement also contained the following

provisions:

### XIV. DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement consisting of twenty-three pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. By pleading guilty, I understand that I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.
**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**
. . . .
I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understood, and approved all of the provisions of this Agreement, both individually and as a total binding agreement.

### XV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

(Doc. 135 in *United States v. Ward et al.,* 2:16-cr-00303-LSC-JHE-2.)

Further, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the Court addressed Mims on the record and inquired about the voluntariness of his plea and his understanding of its nature and consequences and made a finding that his plea was knowingly and voluntarily entered. (Doc. 5-2.) To the extent Mims asserts that his lawyer somehow induced him to plead guilty, his change of plea hearing testimony refutes that assertion. During the plea hearing, the Court asked Mims multiple times whether he would like to go to trial; Mims refused each time. The following exchange occurred:

| | |
|---|---|
| THE COURT: | LET'S TALK ABOUT YOUR LAWYER FOR A MINUTE. WE ARE GOING TO TALK ABOUT YOU BUT LET'S TALK ABOUT HIM. HOW HAS HE DONE AS FAR AS AN ATTORNEY GOES? |
| THE DEFENDANT: | HE IS DOING HIS JOB. I JUST FEEL LIKE HE AINT' TRYING TO HELP ME, FOR REAL. |
| THE COURT: | WHAT HAS HE NOT DONE? HAS HE MET WITH YOU? |
| THE DEFENDANT: | YES, SIR. HE MET WITH ME, BUT IT JUST LIKE HE WANTED ME TO PLEA OUT TO SOMETHING I DIDN'T DO. |
| THE COURT: | ALL RIGHT. WELL, YOU ARE WELCOME TO TRY YOUR CASE. WOULD YOU LIKE TO TRY YOUR CASE? |
| THE DEFENDANT: | I DON'T WANT TO TRY IT. I JUST WANT TO GET SOME BETTER HELP. |

THE COURT:        WELL, YOU HAVE GOT A REALLY COMPETENT, GOOD LAWYER THERE. IF YOU WANT TO TRY YOUR CASE, WE CAN ACCOMMODATE YOU. WE CAN SET YOU FOR TRIAL.

THE DEFENDANT:      I DON'T WANT TO GO TO TRIAL. I JUST WANT SOME BETTER HELP.

THE COURT:        I DON'T UNDERSTAND WHAT YOU WANT.

THE DEFENDANT:      ANOTHER LAWYER OR SOMETHING.

THE COURT:        ALL RIGHT. WHAT HAS HE NOT DONE? WHAT HAS HE DONE? ARE YOU COMPLAINING THAT HE DIDN'T GET YOU A GOOD ENOUGH DEAL, IS THAT WHAT IT IS?

THE DEFENDANT:      NO, HE DOING HIS JOB. IT'S JUST LIKE, I BE TRYING TO EXPLAIN TO HIM LIKE NOT ABOUT THE CASE, ABOUT ANOTHER CHARGE THAT HIM – I AM TRYING TO GET HIM TO REALIZE THAT, TRYING TO SEE IF THERE IS SOMETHING HE CAN DO ABOUT IT.

THE COURT:        ANOTHER CHARGE IN THIS CASE OR ANOTHER CHARGE IN ANOTHER CASE?

THE DEFENDANT:      IN THIS CASE.

THE COURT:        OKAY. I JUST NEED TO KNOW, BECAUSE IF YOU DIDN'T DO WHAT THEY ARE SAYING YOU DID AND YOU WANT A TRIAL, I AM NOT GOING TO TAKE A GUILTY PLEA IF

|  | YOU DIDN'T DO WHAT THEY SAY YOU DID. |
|---|---|
|  | SO, YOU TELL ME. ARE YOU SAYING THAT YOU DID IT, YOU WANT TO PLEAD GUILTY OR NOT? DOESN'T MATTER TO ME. I AM HAPPY TO TRY YOUR CASE. I LIKE TRYING CASES. WHEN DO WE HAVE IT SET, MONDAY? IS IT MONDAY? |
| [PROSECUTOR]: | I DON'T KNOW THAT WE HAVE A SET DATE, YOUR HONOR, BECAUSE THERE WAS A WAIVER OF THE SPEEDY TRIAL ACT. |
| THE COURT: | WELL, WE CAN SET YOU UP PROBABLY IN ABOUT THREE WEEKS MAYBE AND TRY YOUR CASE. |
| THE DEFENDANT: | I DON'T WANT TO GO TO TRIAL. I JUST WANT ANOTHER LAWYER. |
| THE COURT: | WELL, I DON'T SEE A REASON TO GET YOU ANOTHER LAWYER. YOU HAVE NOT TOLD ME ANYTHING THIS MAN HAS DONE. HE IS A GOOD ATTORNEY. I HAVE KNOWN HIM FOR A LONG TIME NOW, AND HE DOES A GOOD JOB. I HAVE NOT HEARD ANYTHING HE HAS DONE. SO – |
| THE DEFENDANT: | I JUST FEEL LIKE HE AIN'T TRYING TO HELP ME. |
| THE COURT: | OKAY. YOU WANT TO TRY THE CASE. A MINUTE AGO YOU SAID "I DON'T WANT TO PLEAD GUILTY TO SOMETHING I DIDN'T DO." |

THE DEFENDANT:     I SAID HE'S NOT UNDERSTANDING ABOUT THE CASE. I WAS TELLING HIM ABOUT ANOTHER CHARGE ABOUT SOMETHING I CAN DO. I DIDN'T SAY THE CASE.

THE COURT:     I DON'T UNDERSTAND. IF YOU DIDN'T DO WHAT YOU ARE CHARGED WITH HERE –

THE DEFENDANT:     I SAID ANOTHER CHARGE.

THE COURT:     AND I ASKED YOU THAT QUESTION. IS IT A CHARGE IN THIS CASE?

THE DEFENDANT:     YES, SIR. I SAID YES.

THE COURT:     WELL –

THE DEFENDANT:     THAT'S WHY I WANTED TO GET ANOTHER LAWYER BECAUSE I FEEL LIKE SOMEBODY ELSE WILL LISTEN TO ME.

THE COURT:     OKAY. WELL, WE'LL TRY YOUR CASE, OKAY? BECAUSE YOU ARE NOT COMMUNICATING WITH ME ABOUT WHAT CHARGE IT IS YOU SAY YOU DIDN'T DO. THEY HAVE GOT YOU CHARGED WITH COUNTS ONE, WHICH IS CONSPIRACY COUNT, COUNTS TWO, THREE, SIX, SEVEN, EIGHT, NINE, AND THIRTEEN. COUNT 17 THROUGH 24, 26, 31, 33 AND 34, AND COUNT 35.

MR. ROBERTS:     JUDGE, IT'S COUNT 55 THAT CONCERNS HIM. IT'S A DRUG CHARGE IN CONNECTION WITH THE DRUG TRAFFICKING OFFENSE. AND THAT'S THE COUNT THAT HE HAS A CONCERN ABOUT.

THE COURT:             OKAY. ALL RIGHT. I MEAN, I AM NOT
                       GOING TO FORCE YOU TO PLEAD GUILTY,
                       BUT I DON'T –

THE DEFENDANT:         I DON'T WANT TO GET FORCED TO GO TO
                       TRIAL EITHER.

THE COURT:             OKAY. WELL, YOU HAVE GOT TO DO ONE
                       OR THE OTHER, IT DOESN'T MATTER TO
                       ME. I AM HAPPY TO – WHY DON'T YA'LL
                       TALK? BECAUSE I CAN'T GET INVOLVED,
                       THE LAW DOESN'T LET ME GET
                       INVOLVED IN PLEA NEGOTIATIONS
                       BETWEEN THE GOVERNMENT AND
                       DEFENDANT. OKAY. SO YOU'RE TELLING
                       ME THAT YOU DID NOT – YOU ARE SAYING
                       YOU ARE NOT GUILTY OF COUNT 55,
                       THAT'S WHAT YOU ARE TELLING ME,
                       RIGHT?

THE DEFENDANT:         YES, SIR.

THE COURT:             OKAY, WELL, GOVERNMENT ARE YOU
                       GOING TO ACCEPT THE PLEA FROM HIM
                       THAT DOESN'T INCLUDE COUNT 55?

[PROSECUTOR]:          NO, YOUR HONOR.

THE COURT:             WHEN CAN WE TRY THIS CASE? AND YOU
                       HAVE A RIGHT TO PLEAD GUILTY TO
                       EVERYTHING EXCEPT COUNT 55, AND
                       WE'LL TRY 55. BUT THE PLEA
                       AGREEMENT, THERE IS NO PLEA
                       AGREEMENT IF YOU DO THAT. DO YOU
                       UNDERSTAND WHAT I'M SAYING?

THE DEFENDANT:         YES, SIR.

THE COURT:             I AM NOT TELLING YOU THAT YOU HAVE
                       TO GO TO TRIAL BECAUSE YOU DON'T.

THE DEFENDANT:         CAN I JUST TALK TO HIM FOR A MINUTE?

THE COURT:             SURE.

(Doc. 5-2 at 5-10.) Mims and Mr. Roberts then met to discuss his plea again, and

after that, the following exchange occurred:

THE COURT:             ALL RIGHT. MR. MIMS, WE HAVE TAKEN A
                       BREAK TO ALLOW YOU TO TALK TO YOUR
                       LAWYER. WHAT DO YOU WANT TO DO?

THE DEFENDANT:         PLEAD GUILTY.

THE COURT:             I DON'T WANT YOU PLEADING GUILTY
                       NOW JUST BECAUSE YOU THINK THAT
                       THAT'S WHAT YOU NEED TO DO OR HAVE
                       TO DO. BECAUSE I AM GOING TO ASK YOU
                       AT THE END OF THIS, "DID YOU DO WHAT
                       THEY HAVE CHARGED YOU IN COUNT 55?"
                       IS WHAT THEY SAID YOU DID, WHAT YOU
                       DID. DO YOU UNDERSTAND ME?

THE DEFENDANT:         YES, SIR.

THE COURT:             NOW, ARE YOU SURE YOU WANT TO
                       PLEAD GUILTY?

THE DEFENDANT:         YES, SIR.

(Doc. 5-2 at 10-11.)

Here, Mims has presented nothing more than conclusory allegations that his

due process rights were violated. He has fallen far short of the standard for "specific

and detailed factual assertions." Further, Mims's conclusory allegations are contradicted by the record, including Mims and his counsel's own representations at the plea hearing and the findings of the Court. This ground for relief is due to be denied.

**C.   Mims's ineffective assistance of counsel claims regarding his sentencing proceedings**

Mims argues that his counsel withdrew previously-filed objections to his PSR without Mims's permission. Mr. Roberts's affidavit states that he and Mims discussed the PSR on May 26, 2017. Mims correctly asserts that Mr. Roberts filed objections to the PSR on his behalf on June 5, 2017. However, Mr. Roberts's affidavit also states that during a meeting on June 22, 2017, Mims advised him to withdraw the objections to the PSR. Mr. Roberts withdrew the objections the next day. Mims now asserts that Mr. Roberts withdrew them without his permission. At the evidentiary hearing, Mims first testified that he *did* ask Mr. Roberts to withdraw the objections to the PSR. Later in the hearing he said that he did not ask him to do so. Mr. Roberts testified in accordance with his affidavit that Mims asked him to withdraw the objections.

Even assuming that Mr. Roberts withdrew the objections without Mims' permission, Mims cannot show that he was prejudiced by Mr. Roberts's alleged action because this Court would have overruled the objections in any event.

The first objection presented by Mr. Roberts related to paragraphs 95 and 102 of the PSR, which suggested a 2-level increase for Obstruction of Justice pursuant to USSG § 3B1.1(c). The PSR recounted the facts that, when law enforcement initiated a traffic stop on Mims's car and the lights and sirens were engaged, Mims jumped out of his moving car, resulting in a crash with another car that was in the carpool line at an elementary school. Children and other individuals were outside the school and present at the time of the crash. Had the objection not been withdrawn earlier, the Court would have overruled the objection, considering the facts that he tried to escape by jumping from his vehicle resulting in a car crash, near a school, with children present, and a firearm present in the car.

The second objection was in relation to paragraph 101 of the PSR, which discussed Mims's role in the offense pursuant to USSG § 3C1.2. According to the PSR, both the probation officer and DEA agent involved in the case asserted that Mims held a "manager or supervisor" role with his involvement in "LocWorld." Mims purchased substantial quantities of narcotics to supply street level dealers. Additionally, he directed juveniles as "runners" for the heroin. The Court would have overruled this objection had it not been withdrawn.

Mims also makes several other conclusory assertions in his habeas petition related to his sentence. First, Mims claims that lifetime supervised release is "too

much" for a first-time drug offender. However, criminal defendants may not raise sentencing error claims in a § 2255 petition. *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

Second, Mims asserts that Mr. Roberts "failed to request a safety valve." The "safety valve" provisions of the U.S. Sentencing Guidelines are codified in 18 U.S.C. § 3553 and allow judges to disregard mandatory minimum sentencing with respect to certain offenses provided the defendant meets five elements. The elements are that the defendant does not have more than four criminal history points, did not use violence or firearms in commission of the offense, did not cause serious bodily injury or death in commission of the offense, did not serve as a "manager or leader" of others involved in the offense, and provided "substantial assistance" to the government. *See* 18 U.S.C. § 3553(f). Because Mims does not meet all the elements required for a motion pursuant to 18 U.S.C. § 3553(f), this Court would not have granted such relief had Mr. Roberts requested it. Accordingly, Mims cannot show prejudice on this claim and it is due to be denied.

### D.    Mims's claim that his defense counsel was ineffective for failing to file a direct appeal

Mims asserts that his defense counsel's performance was constitutionally deficient because he failed to file a notice of appeal when he requested that he do so after sentencing. Mims also claims that his mother tried to contact his attorney for

the purposes of filing an appeal. However, Mr. Roberts denied Mims's assertion in his affidavit. (Roberts Affidavit, Doc. 5-1.) Mr. Roberts asserted that "Mr. Mims never asked" him to appeal "his conviction or any aspect of his sentence." (*Id.*) Additionally, Mr. Roberts stated that he "never heard from any member of his family" regarding his appeal. (*Id.*)

The Eleventh Circuit has held "that a lawyer who disregards instructions from his client to appeal has acted 'in a manner that is professionally unreasonable.'" *Gomez-Diaz v. United States*, 433 F.3d 788, 789 (11th Cir. 2005) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). In that situation, the habeas petitioner does not have to establish prejudice beyond showing that, but for counsel's deficient conduct, he would have appealed. *Id.* at 792-93; *Flores-Ortega*, 528 U.S. at 486 ("[I]t is unfair to require an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit . . . Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed."). Further, an appeal waiver does not establish an absence of prejudice for ineffective assistance purposes. *See Gomez-Diaz*, 433 F.3d at 793 (favorably citing *United States v. Garrett*, 402 F.3d 1262, 1266-67 (10th Cir. 2005) (holding that although the defendant's "appellate rights have been significantly limited by his waiver, . . . the waiver does not foreclose all appellate review of his sentence. If [the defendant]

actually asked counsel to perfect an appeal, and counsel ignored the request, he will be entitled to a delayed appeal. This is true regardless of whether, from the limited perspective of collateral review, it appears that the appeal will not have any merit.")).

Mr. Roberts disputed Mims's allegation that Mims asked him to file an appeal. As such, this Court held an evidentiary hearing because the conflict could not be resolved by weighing Mims's petition against Mr. Roberts's affidavit. *See Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989) (a § 2255 movant is entitled to an evidentiary hearing whenever he alleges facts which, if taken true, would entitle him to relief); *Bolton v. United States*, 221 F. App'x 880, 882–83 (11th Cir. 2007) (vacating district court denial of § 2255 petition where district court credited counsel's affidavit over petitioner's, and explaining that on remand "the district court must conduct an evidentiary hearing to find the facts concerning the failure of trial counsel to file a notice of appeal, and based on those findings decide whether to grant the § 2255 motion"); *Gaston v. United States*, 237 F. App'x 495, 497 (11th Cir. 2007) (vacating district court order denying § 2255 relief and instructing district court to hold evidentiary hearing to determine whether petitioner had asked counsel to file a notice of appeal); *Rosero v. United States*, 195 F. App'x 894, 898 (11th Cir. 2006) (remanding § 2255 action for district court to conduct evidentiary hearing into

whether petitioner in fact requested counsel to file direct appeal). The requirement to hold an evidentiary hearing applies even if the petitioner's appeal would have been dismissed as barred by the appeal waiver in his plea agreement. *See Gomez-Diaz*, 433 F.3d at 789 (vacating and remanding to the district court to hold an evidentiary hearing after the district court dismissed the § 2255 petitioner's failure-to-appeal ineffective assistance of counsel claim on the ground that the appeal would have been dismissed as barred by the appeal waiver).

This Court heard live testimony from Mims and Mr. Roberts at the evidentiary hearing. Mr. Roberts testified that he has no recollection that Mims ever asked him to appeal. He further testified that he had no conversations with or letters from Mims following Mims's sentencing proceeding. Although the evidentiary hearing occurred four years after Mims's sentencing proceeding, Mr. Roberts testified at the evidentiary hearing that he stands by the statement he made in his affidavit submitted in this case, which he signed on August 27, 2018, just one year after the sentencing, that Mims never asked him to appeal. Mr. Roberts also testified that he has been practicing criminal defense law since 2000, and he has often been asked by his clients to appeal their sentences, and when asked, he has done so.

At the hearing, Mims admitted that he waived his right to appeal his conviction and sentence in his plea agreement. He also recalled that he stated during

his change of plea proceeding that he understood the rights he was waiving by pleading guilty. Mims further testified that, despite the appeal waiver, he asked Mr. Roberts immediately after he was sentenced to file an appeal, while they were both still in the courtroom. He stated that he had no further communications with Mr. Roberts after his sentencing. However, he testified that his mother called Mr. Roberts's office several days later to ask him to file an appeal, but she was not able to speak with him. When asked what evidence he had to support his allegation that he asked Mr. Roberts to appeal, Mims admitted that he had none other than his testimony.

The Court credits Mr. Roberts's testimony that Mims did not ask him to file an appeal and does not find credible Mims's testimony to the contrary. On account of the plea agreement's broad appeal waiver, which Mims admits he understood at the time he pled guilty, there were no obvious grounds for appeal, and any appeal taken by Mims would have been frivolous and ultimately dismissed. Further discrediting Mims's testimony at the evidentiary hearing is the fact that he offered contradictory testimony in support of another claim—the claim regarding the motion to withdraw the PSR objections—at first stating that he instructed Mr. Roberts to withdraw the objections and then later stating that he did not ask Mr. Roberts to withdraw the objections. In consideration of the testimony at the

evidentiary hearing, this Court rejects Mims's assertion that he directed Mr. Roberts to file a notice of appeal on his behalf. Because Mims did not ask Mr. Roberts to file an appeal, Mr. Roberts could not have performed deficiently in failing to do so.

Having found that Mims did not ask Mr. Roberts to file an appeal, in an abundance of caution, the Court will also discuss whether Mr. Roberts should have consulted with Mims about an appeal. *See Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) ("We have been told by the Supreme Court that in cases like this— 'cases where the defendant [does not] instruct[ ] counsel to file an appeal'—'the question whether counsel performed deficiently by not filing a notice of appeal is best answered by . . . asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.'") (quoting *Flores–Ortega*, 528 U.S. at 478). A criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal. *See id.*

> Rather than countenancing an inflexible rule, the Court in *Flores–Ortega* held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." [528 U.S.] at 480, 120 S. Ct. at 1036, 120 S. Ct. 1029. This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly . . . waived some or all appeal rights." *Id.*

*Id.*

Guilty pleas tend to indicate that the defendant is "interested in seek[ing] an end to the judicial proceedings." *Otero*, 499 F.3d at 1270 (quoting *Flores-Ortega*, 528 U.S. at 480). In *Otero*, the defendant pled guilty via a plea agreement that included a broad appeal waiver. 499 F.3d at 1270. The defendant then filed a *pro se* motion pursuant to 28 U.S.C. § 2255, alleging that his counsel was ineffective for failing to file a notice of appeal after the defendant insisted that he do so. *Id.* at 1269. Defense counsel denied the defendant's assertions. *Id.* The court held an evidentiary hearing and found defense counsel's testimony to be credible and the defendant's testimony not to be credible. *Id.* The court assumed, however, for the purposes of argument that defense counsel failed to consult with the defendant about an appeal. *Id.* at 1270. The court found such a failure not to be ineffective because the defendant's conviction was the result of a guilty plea; the sentence he received was within the range of what his lawyer had advised him was possible; his plea agreement included an appeal waiver with limited exceptions; and he had no argument that any of the exceptions applied, which meant that any appeal taken by him would have been frivolous and would have been an appeal no rational defendant would have taken. *Id.* at 1270-71.

The instant case is factually analogous to *Otero*. Here, Mims pled guilty pursuant to a plea agreement with a broad appeal waiver. Mims has no plausible arguments that any of the exceptions to the waiver apply, and thus any appeal he may have filed would have been frivolous. Like the defendant in *Otero*, Mims received a sentence that was within the range of what his lawyer would have advised him was possible. Therefore, there was no reason for Mr. Roberts to believe that Mims would want to appeal. For all of the above-mentioned reasons, Mims is not entitled to relief on his ineffective assistance of counsel claim premised on the allegation that Mr. Roberts performed deficiently in failing to appeal. Mims is not entitled to an out-of-time appeal. *See Flores-Ortega*, 528 U.S. at 477.

## VI.   Conclusion

For the foregoing reasons, Mims's § 2255 motion is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings.  This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that a reasonable jurist would find the

district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). This Court finds that Mims's claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on September 23, 2021.

_____
L. Scott Coogler
United States District Judge

160704